IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:18-CR-00735 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | |
| MOHAMMAD H. MOHAMMAD, | ) | GOVERNMENT'S RESPONSE TO |
| | ) | DEFENDANT TO MOHAMMAD H. |
| Defendant. | ) | MOHAMMAD'S SENTENCING |
| | ) | MEMORANDUM |

Now comes the United States of America, by and through its attorneys, Justin Herdman, United States Attorney, and Carmen E. Henderson and Megan R. Miller, Assistant United States Attorneys, and respectfully submits this Response to Defendant Mohammad H. Mohammad (hereinafter, "Mohammad") Sentencing Memorandum (Doc. # 44) setting forth the United States' position regarding the Sentencing for the Defendant. For the reasons set forth below and those to be articulated at the sentencing hearing, the United States respectfully requests a sentence of imprisonment within Mohammad's sentencing range of 21 – 27 months and an order of restitution in the amount of $498,189.

I.      **FACTUAL BACKGROUND**

To support its sentencing position, the United States offers the following summary of the Defendants' conduct. The United States also refers the Court to the description included in the PSR. (Doc. # 43 at ¶¶ 7-18).

A. Food Stamp Fraud Investigation

Defendant and his brother Omar Mohammad were partners of the Muhammad Brothers Partners. Muhammad Brothers Partners was the purported parent company for Holyland Imported Foods, Inc. ("Holyland") with its principal place of business located at 11717 Lorain Avenue, Cleveland, Ohio. Holyland is a specialized grocery store. In or around 2009, the United States Department of Agriculture Office of Inspector General ("USDA OIG") along with the Ohio Department of Public Safety, Cleveland Police Department and a few other agencies identified "problem businesses" that they believed were engaging in food stamp fraud. (Case 1: 16-CR-52, Sent. Tr., Doc. #87 at 38.) Holyland was identified as one of these problem businesses because over the course of a few years, the Ohio Department of Public Safety had collected several statements from individuals who admitted to exchanging food stamp benefits for cash and other non-food items at Holyland. (Id.) Then, in or around 2010 or 2011, USDA OIG began investigating two brothers who operated four convenience stores and a restaurant in Cleveland, for allegations of food stamp fraud. (Id. at 39.) Through that investigation USDA OIG learned that the brothers and their employees were permitted to use multiple food stamp cards to purchase food at Holyland for their restaurant.

Based on that information, USDA OIG directed multiple cooperating witnesses to Holyland in an attempt to engage in fraudulent food stamp transactions. (Id. at 48). As part of the investigation, four cooperating witnesses were provided with controlled food stamp cards and audio and video recording devices. (Id. at 48-49). The cooperating witnesses were then sent into Holyland to attempt to engage in unauthorized food stamp transactions. (Id.). The Defendant, his brother, and their employees permitted the cooperating witnesses to engage in four types of unauthorized food stamp transactions, including: (1) exchanging food stamps for non-food items

2

such as tobacco products; (2) allowing cooperating witnesses to purchase large quantities of food with knowledge that it would be used in the witness's restaurant; (3) allowing cooperating witnesses to use multiple food stamp cards at one time; and (4) extending the cooperating witnesses credit for food stamp benefits to be used on future purchases. (Id. at 65, See Ex. 9).

As a result of the unauthorized transactions with the cooperating witnesses, USDA OIG executed search warrants at Holyland and the Defendant's residence on October 15, 2014. (Id. at 55). During the searches, the agents obtained four notebooks, which contained ledgers of credit extended to customers at Holyland, including credit extended for food stamp benefits. (Id. at 55, 67). Additionally, at Defendant's residence, the agents seized coffee bags of adding tapes with Holyland cash register receipts, and supporting documentation noting the credit card and food stamp sales attached. (Case 1:16-CR-52, Sent. Tr., Doc. #88 at 18-22).

    B. Tax Fraud Investigation

Internal Revenue Service Criminal Investigations Special Agent Ellen Lacy ("SA Lacy") spoke to employees at Holyland and learned that all sales were entered into the cash register. (Id. at 24). Therefore, SA Lacy determined that the cash register receipts should be an accurate representation of the sales made in the store on each day. (Id.). SA Lacy seized cash register receipts from 2009 through 2013. (Id.). However, she did not obtain enough cash register receipts to document Holyland's sales for 2009-2011. (Id.). SA Lacy received every single cash register receipt for 2013 and the majority of the receipts from 2012. (Id.). SA Lacy added up the cash register receipts from 2012 and 2013 and calculated Holyland's total sales in those years. (Id. at 28). SA Lacy compared the total sales amount she calculated from the register receipts to the total sales reported on the Defendant and his brother's tax returns and determined that the defendant and his brother substantially underreported their income in 2012 and 2013. (Id. at 27).

SA Lacy interviewed Defendant and his brother's accountant, Abdullah Jordan ("Jordan"). (Id. at 29). Jordan stated that Defendant provides him with the information to complete the Muhammad Brothers Partners' Form 1065 partnership tax return as well as Defendant and his brother's Form 1040 income tax returns. (Id.). Additionally, he stated that Defendant told him that all of Holyland's income is deposited into the business bank account and that he was not aware of any income not deposited into the Holyland business bank account. (Id.). Therefore, Jordan stated that he relies on the Holyland business bank account to calculate the business's income. (Id.). After calculating the Defendant and his brother's share of the unreported income, an IRS revenue agent calculated the tax due and owing based on the unreported income. (Id. at 30-32).

## II. APPLICABLE LEGAL STANDARDS

A well-established legal framework guides the Court's sentencing determination. The advisory Guidelines range serves as "the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007); *see also United States v. Collington*, 461 F.3d 805, 807 (6th Cir. 2006). The Guidelines thus remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses. The Sentencing "Commission fills an important institutional role: It has the capacity courts lack to 'base its determination on empirical data and national experience, guided by a professional staff with appropriate expertise.'" *Kimbrough v. United States*, 552 U.S. 85, 109 (2007) (internal citation omitted). After determining the appropriate Guidelines range, the Court then turns to the familiar factors set forth in 18 U.S.C. § 3553(a).

### A. Sentencing Guidelines Computation

1. Defendant Omar Mohammad's Guidelines Calculation

The United States concurs with the Guidelines calculations set forth in the PSR. (Doc. #43.) Mohammad's base offense level is 18 because the tax loss is $498,189, which is more than $250,000 and less than $550,000. (*Id.* at ¶ 24.) The government agrees that no specific offense characteristics apply. Thus, Mohammad's adjusted offense level is 18. (*Id.* at ¶ 29.) After a three-level reduction for acceptance of responsibility, Mohammad's total offense level is 15. (*Id.* at ¶ 33.)

Mohammad falls into Criminal History Category II. (*Id.* at ¶ 40.) Mohammad argues that his criminal history category over-represents the seriousness of his criminal history and the likelihood that he will commit other crimes. (Def.'s Sent. Memo., Doc. # 44 at 5.) In support of his argument, Mohammad states that this case arose out of the same investigation as Case No. 16CR52. While this case might have arose out of the same investigation, Mohammad specifically argued in Case No. 16CR52 that the conduct in this case was not relevant to his food stamp fraud and money laundering conduct in that case. Therefore, as his previous convictions represented separate non-relevant conduct, they should properly be considered in determining his criminal history category.

Furthermore, in addition to his previous convictions in Case No. 16CR52, Mohammad was previously convicted of attempted trafficking in illegal food stamps in 2004. This previous conviction was expunged from his record and therefore not counted in determining his criminal history category. Therefore, contrary to Mohammad's assertion, his criminal history appears to under-represent the seriousness of his criminal history and the likelihood that he will commit other crimes. If his expunged conviction were also scored, Mohammad would have four criminal history points and be a Criminal History Category III. Thus, a Criminal History Category II is appropriate in this case.

The corresponding Guidelines range for Mohammad is thus 21 to 27 months.  (*Id*. at ¶ 61.)

**B.     Application of § 3553(a) Factors**

1.     <u>Nature and Circumstances of Offense</u>

The nature and circumstances of the offense counsel in favor of a sentence of imprisonment within of the applicable guidelines range.  Mohammad purposefully and meticulously underreported Holyland's gross receipts to decrease his taxable income.  Despite maintaining accurate and organized records of Holyland's sales from 2009 through 2014 and analyzing each receipt tape, Mohammad failed to provide these records to his tax preparer for purposes of preparing Holyland's partnership tax return, his joint income tax return, and his brother's income tax return.  Rather, Mohammad falsely told his return prepare that all of Holyland's income was deposited into its business bank account.  Mohammad had knowledge that his tax return preparer relied on his false statement and prepared the tax returns solely based on the deposits into the business bank account. Mohammad knew that he maintained cash from sales not included in the account in addition to other sales that were not reflected in the business bank account.  Nevertheless, he verified his false tax returns and permitted them to be submitted to the Internal Revenue Service.

Mohammad's conduct resulted not only in him filing a false joint income tax return, but also resulted in his brother Omar Mohammad filing a false income tax return.  Thus, the nature and circumstances of the offense justify a sentence of imprisonment within the Guidelines.

6

2. History and Characteristics of the Defendant

As a result of the food stamp fraud investigation discussed above, Mohammad was previously convicted of one count of conspiracy to commit food stamp fraud, in violation of 18 U.S.C. 371, one count food stamp fraud, in violation of 7 U.S.C. 2024(b), one count unlawful redemption of food stamps, in violation of 7 U.S.C. 2024(c), and three counts of money laundering, in violation of 18 U.S.C. 1957 in case number 16CR52. Mohammad argues that prior to the food stamp fraud investigation that lead to this case he had "minimal interaction with the criminal justice system." (Doc. #44 at 8.) Mohammad's assertion is false. Mohammad's prior food stamp fraud convictions in case number 16CR52 were not the first time Mohammad engaged in food stamp fraud.

In addition to those convictions, Mohammad was convicted of attempted trafficking in illegal food stamps in 2004. After his first conviction, Mohammad received a sentence that did not include imprisonment and was permitted to retain his authorization to participate in the food stamp program. Additionally, his previous conviction was expunged from his record. Despite this second chance, Mohammad continued to engage in food stamp fraud. Clearly, Mohammad's first food stamp fraud conviction did not deter him from continuing his criminal activity. Rather, he continued to engage in food stamp fraud and engaged in tax fraud.

Mohammad's behavior of continuing the same type of criminal conduct and engaging in additional criminal conduct demonstrates his absence of respect for the law. Thus, Mohammad's history and characteristics merit a sentence of imprisonment within the Guidelines.

3. <u>The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment</u>

Imposing a sentence of imprisonment within the range suggested by the Guidelines would reflect the seriousness of the Defendant's offense, promote respect for the law, and provide just punishment. As demonstrated above, Defendant's conduct was egregious. Moreover, this is a situation where there is a serious and an obvious apparent need to impose a sentence to promote respect for the law. Mohammad was not sentenced to a term of imprisonment after his previous conviction for attempted trafficking in illegal food stamps and he continued his criminal conduct. Only a sentence of imprisonment will promote proper respect for the law and provide just punishment for his crimes.

4. <u>The Need of the Sentence Imposed to Afford Adequate Deterrence and Protect the Public from further crimes of the Defendants</u>.

Imposing a sentence of imprisonment within the Guidelines range would deter the Defendant and others from engaging tax fraud. <u>United States v. Flores-Machicote</u>, 706 F.3d 16, 22 (1st Cir. 2013) ("Deterrence is widely recognized as an important factor in the sentencing calculus."); <u>United States v. Miller</u>, 484 F.3d 964, 967-68 (8th Cir. 2007) ("general deterrence . . . is one of the key purposes of sentencing . . . ."); <u>United States v. Jackson</u>, 835 F.2d 1195, 1199 (7th Cir. 1987) (Posner, J., concurring) ("deterrence is the surest ground for punishment . . . since incapacitation may, by removing one offender from the pool of offenders, simply make a career in crime more attractive to someone else, who is balanced on the razor's edge between criminal and legitimate activity and who now faces reduced competition in the crime 'market.'").

As courts have noted, deterrence is particularly important in "white-collar crimes, because they are often perceived as carrying substantially lesser punishment than other comparable offenses." <u>United States v. Panyard</u>, No. 07-20037-2, 2009 WL 1099257, at *12 (E.D. Mich. April 23, 2009). As the Sixth Circuit stated in *United States v. Peppel*, 707 F.3d 627,

(6th Cir. 2013), "because economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." *Peppel*, 707 F.3d at 641.  Mohammad's tax fraud was not only rational and calculated, but spanned many years.  Mohammad had numerous opportunities to cease his criminal conduct, but instead he chose to continue to underreport his gross sales while maintain accurate records in his possession.

Mohammad argues that the "facts of this case run contrary to the notion that [he] poses any risk of recidivism."  (Doc. #44 at 16.)  That is incorrect. The facts of this case demonstrate that Mohammad poses a great risk of recidivism as he was previously convicted of food stamp fraud and continued his criminal conduct after receiving a second chance, including no sentence of imprisonment and his conviction being expunged from his record. Mohammad did not appreciate the second chance he was given and was not deterred from criminal conduct. Therefore, a sentence of imprisonment is necessary to deter the Mohammad and the public from continuing to engage in tax fraud.

     5.    <u>The Need to Avoid Unwarranted Sentence Disparities.</u>

Mohammad claims that if an offender were "charged in one indictment with the exact same offenses" that he pleaded guilty to in this case and in case number 16CR52 the defendant "would face an advisory guidelines sentence of 24-30 for all of the offenses under the grouping rules of the Guidelines." (Doc. # 44 at 18.)  Assuming Mohammad's calculation is accurate, Mohammad should not be compared to a defendant charged with his instant offense and the charges in case number 16CR52, in one charging document. If a defendant were charged with similar offenses in the same charging document, then those offenses would be relevant to one another and result in one charging document.  Mohammad was given the opportunity to be

sentenced on his prior convictions and the instant conduct in his prior case. However, Mohammad argued that his tax fraud conduct supporting his instant conviction was not relevant to the conduct he was convicted of in case number 16CR52. Therefore, Mohammad agreed that the government would pursue charges for his tax conduct separately. Thus, Mohammad's resulting sentence is not comparable to a defendant that is charged with relevant conduct in one charging document.

**C.     Restitution**

Restitution to the Internal Revenue Service ("IRS") should be imposed as a condition of supervised release. U.S.S.G. § 5E1.1. Mohammad's conduct resulted in a tax loss to the IRS in the amount of $498, 189. Thus, the United States requests that the Court order Mohommad to pay restitution in the amount of $498,189 to the Internal Revenue Service.

**IV.     CONCLUSION**

For the foregoing reasons, as well as those to be articulated at the sentencing hearing, the United States respectfully requests that this Court impose a sentence consistent with the recommendations and requests herein.

Respectfully submitted,

JUSTIN HERDMAN
United States Attorney

/s/ Carmen E. Henderson
Carmen E. Henderson (OH: 0089212)
Megan R. Miller (OH: 0085522)
Assistant United States Attorneys
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3967/3855
(216) 522-8355 (facsimile)
Carmen.Henderson@usdoj.gov
Megan.R.Miller@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of December 2019, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

/s/ Carmen E. Henderson
Carmen E. Henderson
Assistant U.S. Attorney